Good morning. If it may please the court, my name is Laura Crane. I represent the opponents, the County of San Bernardino, Luis Ortiz and Anthony Thomas. I'd like to reserve two minutes for a rebuttal if possible. Certainly. Good luck. Luis Ortiz and Anthony Thomas should not be forced to endure the stress of this litigation and a trial when plaintiffs have failed to meet their burden of violated clearly established law. Well, here's my problem. The deputies, at least Mr. Ortiz, I'm not sure what Mr. Thomas's role in all this is, but you don't make a separate argument as to Mr. Thomas. You don't say he was just following orders. You just you make the same argument as to both deputies. Mr. Ortiz arrests and handcuffs three young women and tell me what crime they had done. So at the time that the students were removed from the school, Mr. Deputy Ortiz was removing them pursuant to the powers given to him under Welfare and Institutions Code Section 625. So you don't contend they committed a crime. You don't contend that he had probable cause to think they had committed a crime. If this court finds that only that all reasonable government actors would know that 625 did not apply in this case, then I would contend that the removal aside I'm asking a very specific question. I'm not asking what he knew or should have known. I'm asking do you contend that at the time that he handcuffed these three young women and took them to the police station, that there was probable cause to believe that they had committed a crime? I contend that yes, a probable cause existed at that time pursuant to violation of Penal Code Section 415, but that the primary source of the removal was 625. We know 415 doesn't apply to registered students, correct? But not all reasonable officers could know that. That's not what I'm asking. You're focusing on what he knew or should have known. I'm asking whether there was, whether you're now contending there was probable, because if there was probable cause, we're done. So my first question is, was there probable cause at this time? Not whether the officer reasonably should have understood something. Was there probable cause at the time these young women were arrested to believe that they had committed a crime? Yes. What crime? I believe that this issue doesn't need to be decided on the backs of these law enforcement, but to the extent that we are going to reach the issue of probable cause to support violation of Penal Code 415, we have undisputed facts. Well, but here's my problem. We know 415 doesn't cover this situation. The California courts have told us that. Now, it may be that your clients reasonably believed it covered the situation at the time. That's not what I'm asking. My first list of things in any qualified immunity case is, we don't go any further if there was probable cause. So I'm asking, was there probable cause at the time? Was there probable, any evidence there was probable cause that these people had committed a crime? And you keep saying, well, the officer could have thought they violated a statute that they didn't violate. That's a separate question. You're contending today that there was probable cause that they committed a crime? As you stated, 415 has since been found not to apply on school campuses. Right. It's not argued in the briefs, but theoretically they could be probable cause for assault or battery. All right. I think maybe the struggle, and I hope I'm understanding, I'm going in the same place I think that Judge Hurwitz is going, focusing on the question of whether there's probable cause that they committed a crime. Let's focus on the facts. What facts did Officer Ortiz know that would lead him to believe or to form the probable cause or even reasonable suspicion that these three plaintiffs in particular had committed a crime? Let's set aside for now because we're going in circles about whether that's a violation of the Welfare Institutions Code or whether that's a 415 PC violation. What facts did he have beyond just generalized suspicion that there was a group of people fighting on and off campus? I adopt Judge Wynn's question by reference. And I would contend that we don't need to be looking for a crime. We're looking for facts supporting the application of Section 625. But the undisputed facts in order to productively move the conversation forward, staying away now from whether it's a 415 violation or some other violation. Let's focus on the facts. What evidence was that L.R. had done anything that justified her arrest and detention? The school officials had told W.O. Ortiz that all seven students including L.R., S.S. and R.H. had been involved in repeated fights on and off campus. That was stated on the belt recording and in Ortiz's declaration. The recording doesn't say. The recording says this is a group of students that have had the S.S., L.R., S.S. or R.H. have been involved in fights or anything else like that, does it? At ER 439. Yes. At 41 seconds, Ms. Kendall states, as far as I know, all seven of you have been part of this continuous argument on campus and off campus. This continuous argument on campus and off campus. But from Ms. Kendall's deposition, we know that she's talking about fights on and off campus. But who? Was there an aggressor? Was there a victim? Because these are some of the girls and we're talking about preteens, right? There's a lot of like gossiping and argument and little petty fights going on. And I'm sure that any school resource officer will be thoroughly familiar with that. So we know now that there was an aggressor and there were victims. And so that morning, as I understand it from the record, several teenage girls basically go into the office to basically complain about bullying behavior by L.V. They get sent back to class and then later they get pulled into this classroom. And this is when this whole thing unfolded. So did Officer Ortiz have some specific knowledge that's apparent in the record? Because I can't find it. And if it's there, I want you to help us look for it. That these particular plaintiffs were the ones who were involved in fighting or with the aggressors instead of the victims. So at the time, Kendall had gathered victims to be lectured by Deputy Ortiz. He had every reason to believe that all seven were aggressors. And we do not know today that the that the plaintiffs were victims. L.V.'s father was in the office at the time complaining that L.V. was the victim. So at the time, what Deputy Ortiz knew was that the school had told him all seven are involved in fighting back and forth, that we don't have a clear victim situation, that they have been involved in repeated counseling and interviews, that the school has thoroughly investigated this by spending three days a week, one half of their day on this subject. Deputy Ortiz says to the students, I don't care who did what and who is saying what and whose fault it is. To me, it's the same ticket, same pair of handcuffs. And then he says, eventually you guys will get into high school. So here's a good opportunity for me to prove a point. Um, how is, what are we to do with those statements? I don't believe that those statements are evidence. Oh, it's true. They're evidence. I mean, they're in the record. Whether or not they're relevant evidence is a separate issue, but they're surely evidence. I don't believe that they're evidence of wrongful intent. The school had called Deputy Ortiz in. I don't care who did what, uh, or who's saying what. You're arresting people and saying, I don't care what the facts are. It's the same pair of handcuffs. And here's a good opportunity for me to make a point. What that strikes me is quite powerful evidence that he doesn't give a darn what they did. The school had called Deputy Ortiz in to give a stern lecture, and that stern words were used should not be surprising. I think a stern lecture is very different than developing sufficient probable cause for handcuffing and hauling these kids away to the station. But Deputy Ortiz certainly had reasonable cause to believe that these students were persistently and habitually violating the school's reasonable and proper orders and were out of the school's control. That gave rise. See, in the school context, I suppose if he'd taken them outside and separated them or even as in C. B. Taking them home to somebody, we might have a different case. This is a case where they were arrested, handcuffed and taken to the police station. Um, so my question is, if he's just responding to a school squabble, hasn't he overreacted? What else could he have done? He was faced with seven students that were threat that were potentially, according to the school's vice principal, going to fight that very day. He went through the scenarios. What does the school's principal say? They were going to fight that very day. In her deposition, she states that she had knowledge or had information that they were going to fight at the nutrition break during that day, including these at these three individuals were all seven. All seven were. That's why she chose the seven students that she collected into the school, also based on her weeks of investigation. Officer Ortiz this that they were going to fight this very day. We do not have evidence that she's communicated that to Deputy Ortiz, but it supports his understanding in the high and that we're on the cusp of another event. And it's that they have an intention to commit a crime later that day, correct? Or to further disrupt the school's environment. But he hasn't. He has evidence. You say I'm not sure that he knows what the vice principal's thinking that later that day, these people intend to commit a crime. And it's further supported in the belt recording when A. J. States she's not stopping until the other side stops. And he arrests them all for what crime? He detains the temporary custody of arrest. This is a this is a put them in hand. What? No, just know who's gonna hit. This is a Fourth Amendment arrest. Putting them in handcuffs to keep them away from each other is one thing. Taking these three girls and putting them in the police car and taking them to the police station is an arrest under the Fourth Amendment. You don't doubt that, do you? The welfare institutions code 6 25 allows him to take temporary. Well, this is a reasonable means of taking temporary custody. Just we can agree on some easy things. This is a Fourth Amendment arrest. He may have immunity for doing it. It may be justified, but this is a Fourth Amendment arrest, is it not? The fact that they were removed from the property gives signs of an arrest. I we can't agree on anything. Uh, so you're your argument is he's got enough information at this point. Why does he take these three? Then that's one of the questions in my mind. All of your arguments are that all seven people are bad actors and about to have a fight, but he arrests three of them and takes them away. Why is that? He rested sick. He took six away. He could not fit seven in the two patrol vehicles. He got lucky that L. V. S. Father was in the office, so he was able to immediately release that student without the circumstances that he had contemplated that create problems by keeping the students on campus. So he doesn't risk that, um, L. V. S. Parents could get in a fight. Arrest them all, but only three. So he takes six to the station out of the seven. Use the word arrest. You don't lose the case if you lose the word arrest. We don't have to fight about everything here. Rest them all, but only three sue, correct? Correct. Okay. Um, before we get off the back, I want to, uh, your your argument is that this was a probable cause arrest. Uh, and you don't want you. None of your argument takes advantage of the special needs exception. I believe the special needs exception applies in both 625 and primarily for 625. Was was the deputy's actions on the school grounds reasonable from the inception and reasonably implemented? And that's why Deputy Ortiz and Deputy Thomas talk about really need probable cause, does he? He just has to be. This has to be reasonable under all the facts and circumstances, right? And that's what I think when you're also looking at 625 is is a constitutional one viewed in T. L. O. S. Reasonable is standard. And did Deputy Ortiz have any reason to believe that it wasn't constitutional I've been reading 6 25. Does it? Do you think custodian means the school? There's no reason not to think that. Well, no, I'm asking what you think. I'm not asking what there's no reason. I believe that I think that 6 25 is fundamental to being applied to school officials where people are trying to control hundreds of students. I'm just reading the language of 6 25. Somebody who's persistently refused to obey the reasonable and proper order directions of his parents. Not true here. Guardian. Not true here. So it has to be custodian. Is it your position that the school? See, I read this is as giving parents or custodians the ability to call the police and saying somebody is, you know, we've got a problem here. Do you think that 6 25 applies to schools? Yes. And there was a California case law saying so? No. And there's not California case law saying that it's not right. But I'm asking what your position is that you believe that custodian means the principal of the school. Parents and guardians are obvious of who those are. Custodian would be an obvious broader category. And I would advocate that it must include schools. I think that it's extremely important that 6 25 apply to schools. You had earlier indicated that what else could he have done? Are you arguing that there's no less intrusive measures available in this case? And he did release LV to her parent. Was there any attempt made to contact the parents of these other people? As discussed in Deputy Ortiz's declaration, he contemplated what? How could I get these students off of the campus and to their parents in the manner that least disrupts the school environment and creates the least risk of harm to the students to myself into the school officials. And he felt that that the best way to do that was to remove them from the school because he's not taking all of the resources away from the school to watch the students to have phone calls coming in because his units out front and risking that when two parents show up that both agree that their child is right and the other is wrong, that we have violence among parents aggressions towards deputy Ortiz or school officials. I have one more question. What is it that you're seeking? Do you think you should get a trial on this case? Or do you think we should order that that the case be dismissed because of qualified immunity? I believe that the qualified immunity was improperly applied in the case and that no, I understand. You think the judge should be reconsidered? That's I'm not. I think we're not. We're passing each other in the night. The judge said no granted summary judgment. He said no qualified immunity and therefore grant summary judgment on the merits. Is it your position that there should be a try that there are disputed issues of fact on qualified immunity or that on this record, the judge should have granted summary judgment in favor of your clients because of qualified immunity. The summary judgment should have been granted in favor of not even not even a dispute of fact. No, because the plaintiffs have not met their burden. That would put this case into the exception to qualified immunity, forcing these law enforcement officers to endure trial. Okay, thank you. All right. Thank you very much. Thank you. May it please. May it please the court. Brent and Aiken Hands from the Law Office of Jury Steering on behalf of the plaintiffs in this action. Your honors, this case strikes home with me both as a father and as a former public school teacher. I think we all understand. I believe you mentioned, Judge Nguyen, that kids do misbehave, especially at this age. That's just something that they do. Now, when it comes to enforcement of laws and rules on on school campuses, this court previously held in Green v. Camreta that that the traditional probable cause standards and not special needs would apply when there's a a investigation of crime using... In other words, if it's a just a traditional type of criminal investigation and not for school enforcement purposes, that the traditional probable cause standard would apply. What about the Welfare Institutions Code? Does that apply, first of all, to the school context? There is no case law that would support extending that to schools, and there really is no reason to... Would Officer Ortiz have reasonably understood that he had that authority? No, that would not be a reasonable understanding, first of all, because he is not the parent and the... And second of all, the particularity issue that arises with regard to 415 also arises with the Welfare Institutions Code. He has no idea who did what. There's no evidence in the record that the principal or the vice principal ever told him who was fighting or when or where was fighting. The council for the county said that there was information related to Officer Ortiz that this was the group of aggressors, and so therefore, he treated them all as aggressors. What does the record show in that regard? Well, it shows that he had insufficiently particular information as to who was doing what. It's that all of them being aggressors, that's a conclusory allegation. He would have an obligation, especially if he has them all there and they're all sitting down, to ask them who did what and try to figure out what happened. He said he doesn't care. He doesn't know, he doesn't care, and he said he wanted to teach them a lesson. Now, you asked whether Welfare Institutions Code applies to that situation. Assuming arguendo that it did, he would have insufficiently particular information as to which students were fighting or habitually disobeying rules of the school or of any of the administrators. And it's not clear that it does apply. It doesn't apply. But not clear is not good enough to get around qualified immunity. If an officer could reasonably believe it applied... If he could reasonably believe it, there is no reason to believe that it could apply in that manner. That would be an unreasonably expansive interpretation of that law. And as you had discussed previously, 415 cannot apply to schools. We have the M. Riefernando C. case. That case merely talked about a law that has been on the books for over 30 years, I believe. And it... Section 415.5 of the Penal Code clarifies that it doesn't apply to students who are enrolled at the school. Now, Deputy Ortiz states that he selected 415 because he thought it was a broader section of the code than the one that specifically applies to a school situation. Under those circumstances, it's reasonable to infer that he is referring to 415.5. But his interpretation of the law is not a reasonable one. There... First of all, we have the Williamson Rule, which I discussed in our brief. It's toward the end here, on page 34. And it talks about when you have a general statute and a specific statute, how the specific one is supposed to apply in the context of the more general rule, and that the specific one is going to be looked upon as an exception to that. He disregarded that long standing rule and just decided that he could use the general statute in order to arrest somebody to teach them a lesson. Now, we also have this principle of statutory construction, and when statutes are in peri materia, that you have to construe them together. Now, Section 415.5 is the next code section over from 415. There's no reason to look at one as being exclusive from the other in terms of looking at them completely separately. They're part of the same section. They apply upon the same subject. And there's no reason why he could believe that 415 would apply at a school when 415.5 explicitly prohibits that. Now... There's references in the record that some of the students involved on that particular date. Does this record show which students he'd had prior dealing with? No, it does not, Your Honor. And were these direct dealings with the students themselves, or was it dealings with the school officials talking about specific students? That was the defendant's conclusory statement. He doesn't offer any specifics about who it was, when it was, or what it was about. And that is something that the district court did point out. Now, when he's talking about who was fighting and when these fights were happening, Deputy Ortiz doesn't have any idea when these things happened. So when he goes in, he's approaching this from... It sounds like from sort of a paternalistic sort of, you know, I wanna teach you guys a lesson not to fight at all. Now, unfortunately, he's dispensing with his obligation to... If he's gonna arrest them for a crime, he needs to that's something that might be inconvenient for him. Maybe he thinks he's above it, but he has an obligation to do it, especially before he handcuffs these little girls and takes them to jail. What if Deputy Ortiz... I'm gonna change the facts a little bit. So when I change them, don't... Sure. Assuming... You don't have to remind me that these are not the facts. Right. Deputy Ortiz says, I wanna teach you a lesson. So he takes them all outside and handcuffs them, and says, this is what's gonna happen to you if you continue fighting. And then he releases all of them. Has he violated your client's civil rights? Well, yes, Your Honor. I mean, if according to the scenario that you just gave, he handcuffed them and he took them outside, and it's my understanding that he didn't transport them to jail. Transport them anywhere. Just says to them, look, you kids need to learn a lesson, and this is what's gonna happen to you in the future if you continue fighting. So be good from now on. And he then releases them and leaves them in the school. Do you have a violation of their Fourth Amendment rights? You know, a reasonable person under those circumstances after they're handcuffed, in that situation, they would not feel free to leave. And yeah, that would still be an arrest. It would be... Obviously, transporting them to the station further solidifies the fact that it's an arrest, but it would be my position that, yes, handcuffing them in order to teach them a lesson, if they don't know that it's going to be a lesson or some sort of a teaching moment. But the facts are, the officer at least believes these people are gonna be fighting with each other. He may not have particularized knowledge. So he says, I know how to nip this in the bud. Let's handcuff them all, take them outside and say, now you can't fight with each other while you're handcuffed. Don't do it in the future or I may have to arrest you. I may have to take you to the police station. He lets them go under those circumstances. You think that violates the Fourth Amendment? It would... Yes, Your Honor. The fact that he is handcuffing them, I'm assuming that it was, for example, my child, would I want him, my child being handcuffed by this guy. Nobody gives up anything in oral argument. No, no, no. I'm not trying to be recalcitrant here. I'm actually... It is my position, Your Honor, that that would be an arrest, notwithstanding his less... Okay. Would he have qualified immunity under those circumstances? I'm a school resource officer. I wanna nip these fights in the bud. He would... I'm gonna do this to stop them, but of course I'm not gonna arrest him. He would not have qualified immunity. And assuming under CB, which it applied the special needs standard arguendo, without reaching whether probable cause applies in that situation, it's because there was not an articulated special need in this situation. And even if there was, it was not reasonably... The need to prevent an imminent fight that was gonna happen later on that day. Well, if that were the case, that perhaps, but the school... And it's undisputed now that the students were not in any violation of a school rule, and they did not discipline the students. That is something that was offered as an undisputed fact. It's undisputed. Now, that asserted... Is there any evidence, if we think about 625, is there any evidence that they've persistently or habitually refused to follow orders, even assuming that the if you identify a group, perhaps you have some basis to investigate who did what in that group. No, no, that's not what I'm asking. I'm asking whether or not there's evidence in this record that these seven young women had habitually and... What's the word? Persistently or habitually refused to follow orders. That's just opposed to being... Acting badly. No, there isn't, Your Honor. There's not any evidence as to any particular student. Nothing beyond just identifying the whole group in a conclusory manner. The group... Is the group guilty of that, at least? And then the next level of questioning would be, who did it? But is there any indication that the group was habitually or persistently violating school orders? The only indication in the record is that the school administrators had identified this group. No, I... And I'm trying to answer your question. We're asking a very particular question here, so focus on that particular question. Yes. I understand the group had been identified as a bunch of bad actors. I understand they were worried about these bad actors. My question is, what evidence is there that this group of bad actors, taken as a whole, forget the individuals, had persistently and habitually refused to obey the reasonable and proper orders or directions of someone? Is there any evidence of that at all? That the group as a whole did? You're... I'm trying to make the question as easy as possible. Yeah, I'm trying... For example, if the principal had said to Officer Ortiz, I told these girls repeatedly to stop engaging in this behavior, that would be... That is in the record. And if she said, I told them three times, and then we could debate whether it's habitual and persistent, but is there any evidence of that nature in the record? There is an extended quote from Ms. Kendall, where she says in the presence of Deputy Ortiz, that so far as I know, and if you want, I can turn to it, but it does amount to still a generalized accusation. I'm not trying to be recalcitrant here, but she has said... We're focusing not on whether or not these girls had engaged in bad behavior or about to fight, focusing on whether or not they had habitually and persistently refused to obey reasonable orders by someone. So focus on the reasonable orders question. I don't know the answer to it. Is there anything in the record that deals with whether or not these young women had been given reasonable orders or directions by people not to do something and had disobeyed them? The answer to your question is beyond identifying the group as a whole. The group as a whole is identified as people who are liable to get in a fight or altercations. I'm focusing on the reasonable directions or orders. Is there any evidence in the record about people having been given reasonable directions or orders? Not to my knowledge, Your Honor. Okay. But even if that's not the case, let's leave the statute aside and concentrate on the special needs exception. If there's evidence in the record that Officer Ortiz knew that there was trouble at the school, knew that there were fights, this group of students is identified as these are the ones, these are the ones who get into the fight. Wouldn't it satisfy the special needs exception for him to do something? If he had just marched them to the edge of school, would that have been okay? Assuming that the first prong of the special needs could apply, what he did was a full custodial arrest and that would not be justified. You're asking me whether... I'm doing just what Judge Hurwitz did. I'm changing the facts. Yes, yes. Okay. If he just marched them to the edge of school and said, go home, could he have done that? Are they handcuffed or not? No. Not handcuffed and he just marched them to the edge of school, that perhaps would be more reasonable under the circumstances. Now, keeping in mind that what is reasonable is constrained to the facts that they're being confronted. I still think that there's a possibility here that there could be a Fourth Amendment violation. Under those circumstances that you just described to me, and I'm going off just your hypothetical here, that there's a much stronger argument that that would be reasonable under the circumstances because of the less intrusive nature of the restraint, the fact that they were not transported from the scene. And also, that is something that an administrator could conceivably do, for example, for holding a child in detention or sanctioning them for a violation of the school rules. One thing a school administrator couldn't do under a special needs exception would be to handcuff the student and transport them to an offsite detention facility because that would be a traditional law enforcement function. They can handcuff CV. In CV, that was a different scenario because you had the student who was reportedly a runner. He's also a student who was reportedly out of control. He had not taken his medication. And most importantly, as relevant here, it was one particular student. We know who was doing what. It's different as when you're identifying a whole group. So that case is distinguishable on those facts. And that is the reason why, just to be clear, why qualified immunity should not apply here. It is distinguishable on the facts. It is much clearer in this situation what the officer should have done, or more accurately, what he definitely could not have done. So just saying these are the ones that are likely to get into a fight, that's not enough. You have to say she is likely to get into a fight. She is likely to get into a fight. She is likely to get into a fight. She's likely to get into a fight. I guess I don't quite get that argument. In this situation, because the nature of a fight is, you know, whatever a fight is, there's an aggressor or somebody who has actually been assaulted, right, being a victim of an assault is not a crime. But yet, that could be something that somebody terms a fight. So calling something a fight is just a conclusory sort of description. But if the school administrators don't even know who the aggressor is, all they want to do is stop the fight. That is perfectly appropriate for an administrator. However, they do have an obligation to, if they're investigating a fight, right, all they want to do is whatever they want to do in order to stop it. They do have some obligation to, you know, investigate, find out what's causing the fight, if it is, in fact, a fight, you know, in a mutual combat sense or if it's somebody being assaulted. And basically, if the special needs exception were to apply, that would allow administrators to do something like hold the student in detention, suspend them, take, go into their backpack and find drugs. It's been applied to situations that are less intrusive in that respect, because those are directly related to managing a school. It doesn't allow school administrators to become deputy sheriffs. And to my knowledge, it's never been extended to allow that sort of thing to happen at a school. And that's the position that defendants are trying to advance here. They're trying to suggest that this officer, in the name of enforcing school rules and discipline and order, should be able to affect a full custodial arrest. And it's our position that's unreasonable. No reasonable officer could have made that mistake. All right. I think we've got your argument well in hand. Thank you very much. Thank you, Your Honor. Now, we've taken you over your time. So just to make sure that both sides get equal time, I'm going to put a couple of minutes on the clock for rebuttal. Thank you, Your Honors. As to Judge Hertz's question on persistently habitually violating school rules, the record at Kendall's deposition at 207 to 208, she discussed that she had spent several weeks trying to keep these students separated, mediating the issues, and had suspended some of the students, but the problems had continued. She felt that she shouldn't involve law enforcement until she had reached the point that she had exhausted her resources. So now, I had seen that in the record. My question is, did Officer Ortiz have any of that information at the time? Yes, he had. When there was a fight, he would respond, he would receive face sheets of the students, and then he would hear about what had happened. He cannot state specifically, I saw S.S.'s picture. Okay, so as to the group, the question that Judge Nguyen asked, he may have had information that members of the group had persistently and habitually... Yes, of the teacher. As to these three individuals, did he have any information that they had persistently, I'm using the statutory language, persistently and habitually resisted orders of a custodian? He had reason to believe that all seven were persistently and habitually based on the school was calling him repeatedly for the fights. The school said, I am trying to mediate the fights and I can't stop it. I need you to come help and address it with the students that are fighting. I'm gathering all the information. To answer Judge Nguyen's question about the group, I'm asking about, it may be that the information about the group was enough. That's fine. I'm just, with respect to these three individuals, did he have any specific information? I think he knew one of them had been involved in a fight a month earlier, but they had already been taken care of. People had decided not to prosecute it. So as to these three individuals, what specific information did Officer Ortiz have that they had persistently and habitually refused to follow? Nothing beyond that they are part of the group because he can't remember the face sheets to the specific individuals. He just remembers that when he walked in the room, he recognized some faces from the face sheets. And because Miss Kendall had been talking to him over time, he had no reason to believe that she had gathered victims to be lectured in this process. And CSRSAT and CB tell us that Deputy Ortiz and Thomas are entitled to rely on the school official's statements to make these decisions. And as far as 415, that all reasonable officials could not believe that 415 was available to school campuses in 2013. Two judges applied 415 to school campuses in 2011 and 2013. So there's no reason to believe that Deputy Ortiz wouldn't think that it was reasonable to apply. And the TLO standard is meant for this purpose. It's to assist schools with maintaining security and order. The school had told Deputy Ortiz they could no longer maintain security and order, and they asked for his help. And this was what was the best option at that time. All right. Thank you very much. Thank you. Matter submitted for decision.
judges: Nguyen, Hurwitz, Eaton